LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLADYS ORTIZ, *on behalf of herself, FLSA Collective Plaintiff and the Class,*<br><br>        Plaintiff,<br><br>    v.<br><br>KIDS TOWN INC.,<br>JOSEPH SUTTON, and<br>MARC SUTTON,<br><br>        Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff GLADYS ORTIZ ("Plaintiff" or "ORTIZ"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant KIDS TOWN INC., ("Corporate Defendant"), JOSEPH SUTTON and MARC SUTTON (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid wages, including overtime wages, due to an improper calculation of overtime hours, (3) liquidated damages, and (4) attorneys' fees and costs.

2.     Plaintiff further alleges, pursuant to the State wage laws of New Jersey and New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid wages, including overtime wages, due to an improper calculation of overtime hours, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3.     Plaintiff also alleges, pursuant to NYLL § 191, that she and others similarly situated are entitled to recover from Defendants liquidated damages due to Defendants' untimely payments of wages.

4.     Plaintiff further alleges individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*, that she is entitled to recover from Defendants for Defendants' unlawful discrimination against her on the basis of age.

5.     Plaintiff further alleges that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq, in that she was denied an opportunity to take leave to care of her grandson.  Plaintiff's grandson is suffering from cancer.  Rather than being offered leave, Plaintiff was denied time-off, and retaliated against.  Plaintiff seeks all applicable remedies under the law, including: (1) compensatory damages; (2) punitive damages, (3) back-pay, (4) front-pay, and (5) attorney's fees and costs.

6.     Defendant KIDS TOWN INC. is children's retail apparel chain with locations across New York and New Jersey.  Plaintiff, putative collective members, and putative class members are all current and former non-exempt employees working for Defendant, and were all victims of Defendant's underpayment of wages, including overtime.  Defendant instituted three policies throughout their stores resulting in a failure to compensate for all wages.  First, Defendants

improperly paid on a bi-weekly basis, a violation by itself, but which also allowed Defendants to manipulate time records to avoid the payment of overtime.  Rather than paying overtime for every hour worked over forty hours, Defendants would frequently fail to compensate overtime until an employee had worked eighty hours over a two-week period. Second, Defendants would frequently fail to compensate overtime of Plaintiff and putative class members even after class members worked a full eighty hours over two weeks. *See* **Exhibit A**, Example Paystubs. Third, Defendants would deduct from employees' compensation breaks lasting 20 minutes or less in violation of NYLL and the FLSA. *See* 29 C.F.R. § 785.18.

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as all Defendants are entities subject to New York's personal jurisdiction.

<u>**PARTIES**</u>

9.      Plaintiff, GLADYS ORTIZ, is a resident of New York County, New York.

10.      Defendants operate a chain of children's apparel retail stores under the common trade name "Kidstown," with at least five locations throughout New York City and New Jersey. Defendants' Kidstown store locations are as follows:

a.   100 E. 170th St., Bronx, NY 10452;

b.   1026 Westchester Ave., Bronx, NY 10459;

c.   749 Broadway, Brooklyn, NY 11206;

d.   651 Kapkowski Rd Elizabeth, NJ 07201 (Lower Level); and

    e.   651 Kapkowski Rd Elizabeth, NJ 07201 (Upper Level)

    (along with any other Kids Town locations in New York or New Jersey not identified herein, collectively referred to as "Kidstown Stores").

11.    Defendants operated Kidstown Stores as a single integrated enterprise under the control of Individual Defendants. Kidstown Stores were engaged in related activities, shared common ownership and had a common business purpose. Specific facts supporting the assertion that Defendants operated as a single integrated enterprise include:

    a.   Kidstown Stores shared a common purpose of operating retail stores in New York City that sold children's apparel.

    b.   Kidstown Stores conducted business under a common trade name "Kidstown," used the same logo, and shared similar décor and appearance.

    c.   Kidstown Stores were advertised jointly on Defendants' website (http://www.kidstownusa.com/stores/).

    d.   Kidstown Stores were family owned and operated by Individual Defendants JOSEPH SUTTON and MARC SUTTON, who visit each of the Kidstown Stores on weekly basis.

    e.   Kidstown Stores shared common ownership, executives and management.

    f.   Kidstown Stores sold similar merchandise procured from common suppliers.

    g.   Employees at Kidstown Stores were interchangeable among the different store locations.

    h.   Kidstown Stores implemented the same wage and hour policies and procedures established by Defendants.

    i.   Kidstown Stores maintained centralized labor relations, human resources and payroll, under the supervision of Rosa Collado, who was Kidstown's HR and payroll manager.

    j.   Kidstown Stores utilized the same payroll system for all employees.

    k.   Defendants centrally advertised career opportunities for Kidstown Stores on their website. Applicants that were interested in employment at any store location could apply on the website.

l.   Employees at Kidstown Stores were all provided the same wage statement forms issued by Defendants.

12.     Corporate Defendant KIDS TOWN, INC. is a domestic business corporation organized under the laws of the State of New York with an address for service of process located at 40 West 14th Street, New York, NY 10003.

13.     Individual Defendant JOSEPH SUTTON and MARC SUTTON had operational control of Kidstown Stores. Each Individual Defendant exercises the power to (and also delegate to managers and supervisors the power to (i) fire and hire employees, (ii) supervise and control employee work schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class Members at Kidstown Stores. Each Individual Defendant has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs and Class Members.

14.     Each Individual Defendant JOSEPH SUTTON and MARC SUTTON additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff, FLSA Collective Plaintiffs and Class Members at Kidstown Stores. Each Individual Defendant ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Kidstown Stores is operating efficiently and profitably.

15.     This Court has personal jurisdiction over the Defendants in that they are incorporated in the state of New York or operate their headquarters from the State of New York.

16.     Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of each Defendant handles goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

17.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

18.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

19.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

20.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to cashiers, supervisors, stockers, and loaders) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

21.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime premium at the rate of one-and-one-half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendants' improper time-shaving violations

of the FLSA. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

22.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

23.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to cashiers, supervisors, stockers, and loaders) employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

24.     At all relevant times, Plaintiff and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

25.     Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. In addition to the Class, there is a subclass of New York employees with claims sounding in NYLL violations (the "New York Subclass"). The members of potential New York Subclass members total over forty (40).  Plaintiff is a member of the Class and the New York Subclass.

27.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to Defendants' corporate practices of failing to pay all wages including overtime wages for all hours worked.

28.     Plaintiff's claims are typical of any member of the New York Subclass, and the relief sought is typical for the relief that could be sought by any New York Subclass member.  All New York Subclass members were subject to Defendants' corporate practices of (i) failing to pay Subclass Members on a weekly basis as required by the NYLL, (ii) failing to provide Subclass Members with proper wage statements with every payment of wages, and (iii) failing to properly provide wage notices to Subclass Members, at date of hiring and dates of all wage changes, per requirements of the NYLL.

29.     Defendants' corporate-wide policies and practices affected all Class Members and New York Subclass members similarly, and Defendants benefited from the same type of unfair

and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Plaintiff is able to fairly and adequately protect the interests of the Class and the New York Subclass and has no interests antagonistic to the Class or New York Subclass. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.     Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a)  Whether Defendants employed Plaintiff and Class Members within the meaning of the State Labor Laws;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d)  Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e)  Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' time shaving practices;

f)  Whether Defendants provided proper wage statements to Plaintiff and New York Subclass Members per requirements of the NYLL;

g)  Whether Defendants provided proper wage notices to Plaintiff and New York Subclass Members per requirements of the NYLL; and

h)  Whether Defendants paid Plaintiff and New York Subclass Members their lawful wages on a weekly basis per the requirements of NYLL §191.

## STATEMENT OF FACTS

*Wage and Hour Allegations:*

34.     In or about 2002, Plaintiff was hired by Defendants to work at one of Defendants' Kidstown Stores.  Specifically, Plaintiff was hired to work at the Kidstown location of 100 E. 170th St., Bronx, NY 10452.  During Plaintiff's employment, Plaintiff was titled as a cashier and then a supervisor, but her job duties remained the same.  Plaintiff worked the register, assisted in stocking, and helped in daily cleaning.  Plaintiff's employment was unlawfully terminated in or around September 20, 2022.

35.     From the start of her employment to approximately 2022, Plaintiff was scheduled to work 11:00 AM to 7:30 PM, Monday through Friday.  During this time, Plaintiff worked at least 42.5 hours a week.  FLSA Collective Plaintiffs and Class members worked similar hours.

36.     From approximately 2022 to the end of her employment, Plaintiff's schedule was changed and she typically worked a half-day less per week.

37.     Plaintiff, FLSA Collective Plaintiffs, and Class members are all non-exempt current and former employees and were victims of Defendants' underpayment of wages, including overtime.  Defendants improperly reduced Plaintiff, FLSA Collective Plaintiffs, and Class members' compensable time in three ways.

38.     First, Plaintiff, FLSA Collective Plaintiffs, and Class members were all victims of Defendants' improper bi-weekly pay, a violation by itself, but which also allowed Defendants to manipulate time records to avoid the payment of overtime.  Rather than paying overtime for every hour worked over forty hours, Defendants would frequently fail to compensate overtime until an employee had worked eighty hours over a Class members' two-week pay period.  Under the laws of New York, New Jersey and the Fair Labor Standards Act, employees must be paid overtime for

all hours worked over forty in a single week.  By raising the threshold for overtime to 80 hours over two weeks, Defendants avoided paying employees significant overtime.  Plaintiff, FLSA Collective Plaintiffs, and Class members were similarly shorted on overtime due to this unlawful policy.

39.     Second, Defendants would frequently fail to compensate overtime of Plaintiff and putative class members even after class members worked a full eighty hours over two weeks. *See* **Exhibit A**, Example Paystubs.  Plaintiff, FLSA Collective Plaintiffs, and Class members were similarly shorted on overtime due to this unlawful policy.

40.     Third, Defendants would deduct from employees' compensation breaks lasting 20 minutes or less in violation of state labor laws and the FLSA. *See* 29 C.F.R. § 785.18. Plaintiff, FLSA Collective Plaintiffs, and Class members were similarly shorted on wages and overtime due to this unlawful policy.

41.     Plaintiff, FLSA Collective Plaintiffs, and Class members were not paid for all overtime hours worked. Plaintiff estimates that prior to 2022 she would be missing approximately two hours of overtime pay each week. FLSA Collective Plaintiffs and Class members were similarly short overtime pay every week.

42.     After 2022, Plaintiff's wages were inappropriately reduced due to the above violations by at least 40 minutes a week due to Defendants' wrongful policy of deducting breaks lasting 20 minutes or less.

43.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL.

44.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and statements as required by NYLL.

45.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the State legislatures, such as the New York legislature, concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

46.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide notices and statements continues to result in delayed payment of all proper wages owed to Plaintiff and New York Subclass Members.

47.     Defendants knowingly and willfully operated their business with a policy of not properly compensating either FLSA overtime rate (of time and one-half) or the State wages and overtime (of time and one-half) to Plaintiff, FLSA Collective Plaintiffs, and Class members, including due Defendant's policy of time shaving.

48.     Throughout her employment, Defendants regularly failed to pay Plaintiff and New York Subclass members their wages within seven (7) days of the end of the week in which Plaintiff

earned them, in violation of NYLL § 191(1)(a)(i).[1] Therefore, Plaintiff and New York Subclass Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

49.    Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis.  Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, the New York Subclass members spent the majority of their day engaged in physical labor. Among other activities, Plaintiff and the New York Subclass engaged in the following: (i) cleaning the facility, including the restrooms, (ii) stocking shelves, (iii) holding, packing, and assisting customers with purchases.

50.    Further, manual workers generally include those employees, like Plaintiff and New York Subclass members, whose labor is easily interchangeable with other able-bodied individuals. As workers earning only slightly above minimum wage, the jobs market itself demonstrates the interchangeability of New York Subclass members.  NYLL §191 was passed to protect individuals in the types of low-wage, interchangeable jobs occupied by Plaintiff and the New York Subclass. Plaintiff and the New York Subclass hold positions with Defendants which are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement and low-wages of Plaintiff and the New York Subclass make them dependent upon their weekly earnings.  This dependance and lack of job security places Plaintiff and the New York Subclass directly in the category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

---

[1] *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

51.     That Plaintiff and the New York Subclass members were engaged in easily trained, easily replaceable positions are clearly demonstrated by their earnings.   At the end of her employment, Plaintiff earned $17.50 an hour, a figure lower than the average individual employed in New York State as a janitor, pest control worker, tree trimmer, lawn supervisor, or waiter.[2] Employees in those positions in New York State earned over $19.00 an hour on average.  The jobs market itself demonstrates that Plaintiff and New York Subclass members, who worked in New York City for $17.50 an hour, were not employed in a highly skilled position.  Given the low wages of the New York Subclass and realities of the New York Subclass's daily work, New York Subclass members must be afforded the protections provided under NYLL §191.

52.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

*Plaintiff's Individual Claims:*

53.     Plaintiff's individual claims for discrimination and retaliation center on Defendants' reprehensible and disparate treatment of Plaintiff.

54.     For at least the past year, the general manager of the location at which Plaintiff has worked for the past 20 years, CAMILLE HADDAD, singled Plaintiff out and harassed her.

55.     CAMILLE HADDAD engaged in a campaign to force Plaintiff to quit.

56.     Mr. HADDAD berated Plaintiff in front of co-workers and customers.

57.     Mr. HADDAD demanded others call Plaintiff by demeaning nick-names despite requests to stop.

---

[2] https://www.bls.gov/oes/current/oes370000.htm; https://www.bls.gov/oes/current/oes353031.htm#st.

58.    Mr. HADDAD refused Plaintiff's request for leave to care for her sick grandson. Plaintiff's grandson has cancer.

59.    That Defendants would callously deny a short two (2) week leave to care for her grandchild was devastating.  That Defendants would do so immediately after the return of a younger employee for whom Defendants permitted a month-long leave, crystalized Defendant's intent to force Plaintiff to quit.

60.    Plaintiff made complaints to Defendants human resources person ROSA COLLADO.

61.    Plaintiff made complaints directly to Defendants' owner JOSEPH SUTTON who inspected the facility once a week.

62.    Despite Mr. CAMILLE HADDAD's history of reprehensible conduct in hiring young woman based on his romantic interest, Plaintiff's claims that she was being harassed and forced out due to her age were ignored.  Over the years, Mr. CAMILLE HADDAD has conceived three children from three different woman, all of whom worked directly under him as cashiers. Over the years, Plaintiff has been passed over for promotion and wage increases as Defendants and CAMILLE HADDAD provide these benefits to the younger employees to whom he was attracted.  In fact, Defendants have a history of covering up sex discrimination and harassment in their facilities.   Defendants have a history of covering for manager CAMILLE HADDAD's misdeeds.  In 2019, an ex-employee filed a federal action against Defendants as General Manager, CAMILLE HADDAD, stating that Mr. HADDAD frequently and repeatedly told other employees that this now former employee "has a small penis" and made unwanted sexually explicit remarks. In addition, Camille found this employees' personal photos, posted the photos all around the store,

and made fun of this individual. CAMILLE HADDAD's abuse, sexualization of the facility, harassment, and discrimination were a daily occurrence and well known to Defendants.

63.     Moreover, despite assurances that Plaintiff's complaint and communications to Human Resources were confidential, not a day passed before CAMILLE HADDAD knew who complained and escalated his harassment of Plaintiff.

64.     CAMILLE HADDAD printed out the email he received from human resources which claimed complaints were supposedly treated with confidentiality and posted them everywhere to mock Plaintiff and let everyone know he knew Plaintiff complained.

65.     Shortly thereafter, on September 16, 2022, CAMILLE HADDAD made another unprofessional comment to Plaintiff during a work meeting and in front of co-workers.  Plaintiff calmly complained to CAMILLE HADDAD that his conduct toward her differed when compared to the younger employees.  CAMILLE HADDAD went off on a tirade.  Plaintiff had to stand in the meeting during his outburst, until she was sick and broken down to tears.  Plaintiff left the room immediately upon believing the meeting was over.

66.     CAMILLE HADDAD claimed that Plaintiff was insubordinate for leaving in the middle of his unhinged rant.  CAMILLE HADDAD, with support from human resources, suspended Plaintiff until the September 20, 2022.  When Plaintiff returned to work on September 20, 2022, Plaintiff tried to log-in but was denied.  Plaintiff found CAMILLE HADDAD and asked what was going on, but he told her that she was fired and shooed her away with a hand gesture while smiling.  Apparently, CAMILLE HADDAD simply wanted to see Plaintiff's face when he fired her from a position she held for twenty years.

67.    Plaintiff had to endure a campaign to make her quit then and, when that failed, a clearly pretextual firing.  Defendants' conduct did not end there.  Defendants next attempted to deny Plaintiff her unemployment benefits to which she had spent 20 years contributing.

68.    On October 3, 2022, Defendants informed the New York State Department of Labor that Plaintiff lied to the unemployment office and that she was still employed with Defendants.  Only upon realizing that a claim of continued employment would not hold up to scrutiny, Defendants then claimed that Plaintiff was fired on September 20, 2022 'for cause' due to an outburst on September 16, 2022.  Defendants later claimed that Plaintiff was actually not fired at all, but misunderstood the length of an issued suspension and was then fired 'for cause' because of the misunderstanding.  In reality, Plaintiff was harassed and fired, because she was an older employee, asked for leave to care for a grandchild with cancer, and made a lawful complaint about her denial and treatment.  Defendants' ever-changing story to the contrary demonstrates the pretextual nature of Plaintiff's termination.

69.    To this day, Plaintiff is forced to hear second hand how CAMILLE HADDAD continues to mock Plaintiff claiming he sent the "princess" away on a "permanent vacation" and how he "retired" the "old-lady."

70.    The discrimination from an employer to whom she had given 20 years of her employment, has left Plaintiff shattered, unable to sleep, anxiety ridden, physically sick, and in pain.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

71.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

72.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

73.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

74.    At all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

75.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages due because of unpaid wages, including overtime wages, in violation of the FLSA.

76.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

77.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all

hours worked, including overtime hours, when Defendants knew or should have known such was due.

78.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

79.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

80.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, due to time shaving, plus an equal amount as liquidated damages.

81.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF STATE LABOR LAW</u>**

82.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

83.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of state labor laws including NYLL §§ 2 and 651.

84.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members the full amount of regular and overtime wages as a result of time shaving and failure to compensate overtime hours in violation of New Jersey Wage Laws and NYLL.

85.     Defendants willfully violated Plaintiff's and the New York Subclass Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

86.     Defendants knowingly and willfully failed to provide Plaintiff and New York Subclass Members with proper wage statements as required under the State law.

87.     Defendants knowingly and willfully failed to provide Plaintiff and New York Subclass Members with proper wage and hour notices as required under the State Law.

88.     Due to the Defendants' State law violations, Plaintiff, Class Members, and Subclass Members are entitled to recover from Defendants unpaid wages due to a failure to pay overtime premiums for overtime hours, time shaving, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

### <u>DISCRIMINATION AND RETALIATION UNDER THE<br>NEW YORK STATE HUMAN RIGHTS LAW</u>

**(N.Y. Exec. Law § 292 *et seq.*)**
**(brought on Plaintiff GLADYS ORTIZ's behalf only)**

89.     Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment."

91.     Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of her age. Defendants were aware of their employees' behavior and history of behavior, but failed to take any steps to mitigate the unlawful practice or accommodate Plaintiff.

92.     Defendants fired Plaintiff and lied about the fact that she was fired, then stated two false, mutually exclusive, rationales for the firing.  After 20 years of employment, this firing occurred mere months after Plaintiff made a lawful complaint about treatment.  Such discrimination, termination, and retaliation are prohibited by the New York State Human Rights Law, which provides that it shall be an unlawful employment practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article." New York State Executive Law § 296(7).

93.     Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

### COUNT IV

### DISCRIMINATION AND RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

**(N.Y.C. Admin. Code § 8-101 *et seq*)**
**(brought on Plaintiff GLADYS ORTIZ's behalf only)**

94.     Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

95.     The New York City Administrative Code §8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national

origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

96.     Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff on the basis of her age.

97.     Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## COUNT IV

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

### (brought on Plaintiff GLADYS ORTIZ's behalf only)

98.     Plaintiff realleges and incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     The FMLA states in pertinent part: " The Family and Medical Leave Act of 1993, as amended, (FMLA or Act) allows eligible employees of a covered employer to take job-protected, unpaid leave, or to substitute appropriate paid leave if the employee has earned or accrued it, for up to a total of 12 workweeks in any 12 months (see § 825.200(b)) because the employee is needed to care for a family member (child, spouse, or parent) with a serious health condition"

100.    Section 2611(11) states in pertinent part: "the term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

101.    Plaintiff is an eligible employee under the FMLA, as she worked for Defendants for over a year at the time she was fired for requesting time off to take of her grandson.

102.    Defendants willfully violated Plaintiff's rights under the FMLA by failing to provide leave for Plaintiff so that she can tend to her grandson's illness.

103.    Plaintiff alleges that in the alternative to retaliating against Plaintiff due to her age, Defendants retaliated against her for making a lawful request for leave.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, Class Members, and Subclass Members respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, New Jersey Wage Laws and the NYLL;

b.  A declaratory judgment that the practices complained of herein are unlawful under the FMLA, NYCHRL, and NYSHRL;

c.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.  An award of unpaid wages due to time shaving under the FLSA, New Jersey Wage Laws and the NYLL;

e.  An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

f.  An award of liquidated damages as a result of Defendants' willful failure to timely pay wages, pursuant to the New Jersey Wage Laws and the NYLL;

g.  An award of all applicable damages under the FMLA, NYSHRL and the NYCHRL;

h.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.   Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiff as Representative of the Class; and

l.   Such other relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: January 26, 2023                     Respectfully submitted,

                                                        LEE LITIGATION GROUP, PLLC

By: */s/ C.K. Lee*

                                                         C.K. Lee, Esq. (CL 4086)
                                                         Anne Seelig, Esq. (AS 1976)
                                                         148 West 24th Street, Eighth Floor
                                                         New York, NY 10011
                                                         Tel.: (212) 465-1188
                                                         Fax: (212) 465-1181

                                                         *Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*